**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **THOMAS SMYTHE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:24-cv-00074** |
| ) | **Judge Aleta A. Trauger** |
| **JIM HYSEN and** ) | |
| **CITY OF FAIRVIEW, TENNESSEE,** ) | |
| ) | |
| **Defendants.** ) | |

**<u>MEMORANDUM</u>**

Before the court are (1) defendant Jim Hysen's Motion for Dismissal of Amended Complaint and/or Stay and Reference for Arbitration (Doc. No. 16); and (2) defendant City of Fairview's Rule 12 Motion to Dismiss (Doc. No. 19). Both defendants also filed Memoranda in support of their motions; the plaintiff filed a consolidated Response, and the defendants each filed a Reply. (Doc. Nos. 17, 20, 25, 26, 27.) For the reasons set forth herein, Hysen's motion will be granted in part and denied in part, and the City's motion will be granted.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. The Amended Complaint and Attached Exhibits

Plaintiff Thomas Smythe filed the Complaint initiating this action on January 25, 2024. (Doc. No. 1.) Jim Hysen, the only defendant named in that pleading, responded by seeking dismissal, a stay, or referral to arbitration, which prompted the plaintiff to file his Amended Complaint. (Doc. No. 12.) Other than by naming the City of Fairview ("City") as a defendant and incorporating a cryptic breach of contract claim against the City, the Amended Complaint varies little from the original.

The Amended Complaint asserts that Smythe is a real estate developer and a citizen of Madison County, Alabama. Hysen, also a real estate developer, is a citizen of Williamson County, Tennessee, and the City is a municipality and political subdivision of the state of Tennessee. (Doc. No. 12 ¶¶ 1–3.) The plaintiff asserts that the court has diversity jurisdiction over the plaintiff's claims against Hysen and supplemental jurisdiction over the claims against the City. (*Id.* ¶ 4.)[1]

Prior to this lawsuit, Hysen pursued another lawsuit in this court against the City, asserting various claims under 42 U.S.C. § 1983 relating to the denial of the opportunity to develop certain property within the City. After five years of litigation, that lawsuit concluded with a Rule 68 Offer of Judgment by the City, which Smythe accepted. The court entered judgment (the "Judgment"), incorporating the terms of the Offer of Judgment, and dismissed the case with prejudice. *See Smythe v. Bd. of Comm'rs*, No. 3:16-cv-02712 (M.D. Tenn. Jan. 21, 2020) (Judgment, Doc. No. 78); ; *id.* (M.D. Tenn. Jan. 16, 2020) (Offer of Judgment, Doc. No. 76) (both filed as a collective exhibit to the Amended Complaint (Doc. No. 12-1)).

Pursuant to the terms of the Offer of Judgment, a monetary judgment was entered against the City and in favor of Smythe in the net amount of $250,000, including all costs and attorney fees; and a non-monetary judgment was entered against the City based on the following terms and conditions, as relevant here:

> (1) the City approved a "Preliminary Development Plan," attached as an exhibit to the Offer of Judgment, for the development of approximately 32 acres of property (the "Property"), containing 89 residential lots, located on Cox Pike in Fairview, and granted to Smythe vested rights to develop the Property;

> (2) the City agreed that the entry of Judgment operated to rezone the Property from RS-40 to RS-15 Planned Unit Development ["PUD"];

---

[1] Smythe and the City are also diverse, but it appears that the amount in controversy in the dispute between Smythe and the City would not meet the jurisdictional amount.

(3) Smythe, as developer, would not be required to submit a new application for development and would not be required to provide additional offsite improvements other than a right-turn lane shown on the Preliminary Development Plan, and development of the Property would be "governed by any judgment entered pursuant to this Offer of Judgment and, to the extent they do not conflict with this Offer of Judgment, the Zoning Ordinance of the City of Fairview, Tennessee, in effect as of March 10, 2015 (a copy of which is attached hereto as Collective Exhibit B), and all other ordinances and governing documents for the City in effect as of that date";

(4) Smythe, as the developer, intended to create a standard Homeowners' Association ("HOA") incorporating certain standards that exceeded the City's minimum requirements for the construction of single-family detached residences on any of the 89 lots within the Property, with the "ultimate size and pricing of the residences" to be determined by the "market";

(5) Smythe, as developer, would need to arrange for the design, installation, maintenance and operation of an onsite wastewater system ("system") since there was no public sewer utility servicing the Property. The City took "no position as to the type of onsite wastewater system installed, maintained and operated on the Property," so long as certain conditions were met, including that (a) the system be approved by the Tennessee Department of Environment and Conservation ("TDEC"); (b) the system be self-contained and wholly situated on private property; and (c) the system not be connected to the City's sewer system; and

(6) The development rights conveyed to Smythe by the Judgment were freely transferable and assignable by Smythe, and any assignment would be subject to the terms and conditions of the Offer of Judgment, with this court retaining jurisdiction to "enforce any judgment entered pursuant to [the] Offer of Judgment."

(Doc. No. 12-1, at 3–6.)

Smythe asserts that his acceptance of the Offer of Judgment and the subsequent entry of the Judgment constitutes a contract between him and the City to develop the Property "in a specified manner." (Doc. No. 12 ¶ 13.)

After obtaining the vested rights to develop the Property through the resolution of his federal lawsuit against the City, Smythe entered into a contract with Hysen for the purpose of obtaining funding to purchase and then develop the Property in accordance with the Judgment. This contract, titled Real Estate Purchase Agreement for Tennessee ("Real Estate Purchase Agreement"), attached as Exhibit 2 to the Amended Complaint, is dated April 30, 2020 and is

actually between Smythe and Welch & Proctor,[2] collectively, as "Seller," and LandVenues Inc. "and/or assigns" as "Buyer" of the Property, for the purchase price of $550,000. (Doc. No. 12-2, at 1.)

The conveyance of the Property specifically "include[d] the assigned court Judgment providing buyer with the vested legal rights" in the Property and a "50/50 joint venture with the Seller [Smythe] in the net proceeds from the development and sale of the final subdivision lots as they are sold once the bank loans for construction are repaid." (*Id.* ¶ 46; *see id.* ¶ 47 ("Smythe is selling to LandVenues Inc. and/or its assigns not only the land, but the court order vesting the 89-Lot Plat that goes with the land in exchange for a separate Joint Venture agreement as described above.").) According to the Amended Complaint, LandVenues Inc. is a company controlled by Hysen. Hysen signed the Real Estate Purchase Agreement on behalf of LandVenues Inc.,[3] and LandVenues Inc. subsequently assigned to Hysen its rights under the agreement. (Doc. No. 12 ¶¶ 18, 20.) The anticipated closing date was on or before June 15, 2020. (*See* Doc. No. 12-3.)

Smythe and Hysen entered into a second contract, the General Partnership Agreement ("Partnership Agreement"), creating Inanna General Partnership ("Inanna GP" or "the Partnership"), on July 10, 2020. (*See* Doc. No. 12-2.) The Partnership Agreement cross-references the Real Estate Purchase Agreement and provides that Smythe and Hysen would each have a 50% ownership in the partnership created by the Partnership Agreement. (Doc. No. 12-3, at 1.) By way of "background," the Partnership Agreement states that Smythe would "transfer ownership" of the Property to Hysen but that Inanna GP would "then accept[] title" to the Property "on behalf of both partners" and would be the "land holding entity for long term capital gains." (*Id.*) "Similarly,

---

[2] Smythe was purchasing the Property from Welch & Proctor at the same time that Smythe was selling it to LandVenues Inc. (*See* Doc. No. 12-1 ¶ 47.)

[3] The signature on the first Contract is illegible but is presumably that of Hysen.

Smythe [would] transfer the court vested 89 Lot R-15 PUD to [the Partnership] which will hold both the zoning and development rights." (*Id.*) Inanna GP would provide the bank financing for the land acquisition, while a separate entity, Cox Pike LLC ("CP"), would "handle the actual construction and sale of the lots on a fee basis with net proceeds" accruing to the Partnership. (*Id.*) Hysen would be the managing member and 50% owner of CP, while an unrelated third party held the other 50%. (*Id.*) Hysen is also identified as the "managing partner" of Inanna GP, authorized to sign documents related to bank financing "and tangential issues." (*Id.* at 2.)

The stated purpose of the Partnership Agreement was to acquire and "entitle" the Property "for long term capital gains," with net proceeds after payment of certain specified expenses and all profits to be distributed equally between the partners. (*Id.*) All decisions regarding "design, engineering, layouts, expenditures, et el. [sic]" were required to be unanimous. (*Id.*) In the event of any disagreement, the partners agreed to "submit to the binding decision of a thirty party" arbitrator. (*Id.*) Neither party was permitted to sell or transfer his equity or control in the Partnership, and both parties agreed to "personally indemnify each the other." (*Id.*)

The Partnership Agreement's only reference to the Judgment Smythe obtained against the City is contained in the sentence stating that Smythe would convey his vested development rights in the Property to Inanna GP. Smythe alleges, however, that "the parties also discussed orally that their agreement was to implement the development plan as laid out in the federal judgment." (Doc. No. 12 ¶ 24.)

Smythe alleges that Hysen entered the Partnership Agreement "without any intention of developing the land in accordance with the federal judgment." (Doc. No. 12 ¶ 25.) "Instead, he intended to make significant changes to the development not authorized by the judgment," including "using a different type of sewer system," "taking out a key roundabout," and

"substantially cutting the amount of land previously dedicated to a public park." (*Id.*)

Although not contingent upon the buyer's obtaining financing, the Real Estate Purchase Agreement anticipated that Hysen would obtain funding from Simmons Bank to cover the entire $550,000 purchase price. (Doc. No. 12-2 ¶¶ 5. 49.) However, according to Smythe, the bank unexpectedly refused to fund the full amount of the purchase price, so Smythe extended Hysen a promissory note ("Promissory Note" or "Note") to cover the deficiency. (Doc. No. 12 ¶ 26; *see also* Promissory Note, Doc. No. 12-4.) Pursuant to the terms of the Note, Smythe as "Lender" agreed to lend to Inanna GP and Hysen together as "Borrower" the sum of $125,000 at a 6% interest rate, to be repaid in full on July 14, 2021, or one year from the date of execution of the Note. (Doc. No. 12-4 ¶¶ 1–2.) The Note was secured by the Property and by the "court ordered right to the plat for 89 lots" and provided that the Property was subject to repossession upon default. (*Id.* ¶¶ 4, 6.)

Although not spelled out in the Amended Complaint, it appears that, with the execution of the Note, the Real Estate Purchase Agreement closed as anticipated but subject to the terms of the subsequent Partnership Agreement, and Smythe, in accordance with the Partnership Agreement, caused the execution of a Warranty Deed transferring the Property to Inanna GP on July 14, 2020. (Doc. No. 12 ¶¶ 30–31; *see also* Doc. No. 12-5, Warranty Deed.)[4]

Smythe alleges that Hysen, even before executing the Partnership Agreement, had "secretly" applied to TDEC for permission to implement an activated sludge sewer system, listing the Water Authority of Dickson County ("WADC") as his proposed sewer operator. (Doc. No. 12 ¶¶ 35–36.) The plaintiff alleges that going through the WADC was contrary to the Judgment

---

[4] The Warranty Deed actually reflects that Judy E. Welch, Tom Proctor, and Georgia M. Denny, the individuals from whom Smythe purchased the Property, conveyed it directly to Inanna GP. (Doc. No. 12-5.)

incorporating the Offer of Judgment, which anticipated that Smythe would avoid the involvement of the WADC and instead create a Homeowners' Association that would contract with "its own licensed operator" and set up a private sewer system rather than a public sewer system, thus saving a substantial amount of money. (*Id.* ¶¶ 38–39.) Smythe alleges that, even before Hysen signed the Partnership Agreement, TDEC had denied his application to implement an activated-sludge sewer system and announced that any future permit applications for the Property would require approval from the WADC. (*Id.* ¶¶ 40–41.)

Following execution of the Partnership Agreement, Hysen allegedly "first revealed to Smythe that he intended to deviate from the federal judgment." (*Id.* ¶ 46.) In particular, Hysen "steadfastly refused to work with Smythe in developing the court plan as originally contracted" and instead has used his veto power as an equal partner to "sabotage any efforts to develop the land as outlined in the federal court judgment." (*Id.* ¶ 47.)

Hysen allegedly failed to repay the $125,000 in accordance with the terms of the Promissory Note and also has "steadfastly refused to provide Smythe with the results of a field survey carried out for the property." (*Id.* ¶¶ 51, 53.)

Smythe alleges that, because he was "never . . . fully paid as agreed" and had become "aware that Hysen was *opposed to following through with the development plan* as laid out in the federal court judgment, Smythe ultimately never assigned his development rights to Inanna GP." (*Id.* ¶ 54 (emphasis in original).) He alleges that Hysen nonetheless continues to work on developing the Property and continues to "deviate, materially, from the plan as laid out in the federal judgment." (*Id.* ¶ 56.)

He explains:

In October 2021, Smythe and Hysen agreed to arbitrate certain issues, most notably who would control the partnership to end their deadlock. In January 2022, the

arbitrator expelled Smythe from the partnership, dissolved the partnership, and placed Hysen in control of the company and the project—only with an obligation to pay Smythe his fair share of any profits obtained. On April 17, 2022, a court later entered a judgment to confirm the [arbitrator's] rulings.

(*Id.* ¶ 57.)

Smythe further asserts that, although certain issues were resolved through arbitration, both "the arbitrator and the confirming court expressly held that Smythe could still pursue, in further litigation, any other legal claims that he had against Hysen," which is what Smythe purports to be doing now. (*Id.* ¶ 61.)

Regarding his claim against the City of Fairview, Smythe alleges that, in early 2024, the City "authorized Hysen . . . to develop the [Property] in ways inconsistent with the [Judgment]," namely, by "authoriz[ing] him to make . . . substantial changes," including by eliminating the roundabout and reducing the size of the public park. (*Id.* ¶ 62.) Smythe complains that the City Attorney and the citizen Planning Commission approved the changes without going through the City's Board of Commissioners, which was the entity that approved the Offer of Judgment. (*Id.* ¶ 63.) He acknowledges that the City and the Board have "acquiesced" in the approval of the changes by "failing to stop" Hysen's plan. (*Id.* ¶ 63.)

Based on these allegations, the Amended Complaint sets forth the following claims for relief:

(1) intentional misrepresentation against Hysen, based on his purportedly telling Smythe orally and in writing that he was entering into the Partnership Agreement to "develop the court-approved plat," all while knowing that he had no intention of following the approved plat (*id.* ¶ 66);

(2) breach of fiduciary duty against Hysen, based on his allegedly violating his fiduciary duty owed as a partner in Inanna GP by "failing to notify his partner about the prior application to TDEC that committed the project to use WADC as a sewer operator, by failing to provide his partner with the results of the field survey, and ultimately by joining on as a partner to complete the court-approved plat and then refusing to complete said plat" (*id.* ¶ 68);

(3) breach of contract against Hysen for "failing to take any reasonable steps to develop the court-approved plat as contemplated by" the Real Estate Purchase Agreement and Partnership Agreement (*id.* ¶ 70);

(4) breach of contract against the City, based on its purportedly "authorizing Hysen (and/or Inanna GP) to develop the land in a manner substantially contrary to its own contract with Smythe" (*id.* ¶ 71);

(5) intentional misrepresentation against Hysen based on his agreement to repay the plaintiff $125,000 in accordance with the terms of the Note, while knowing he never intended to fulfill this promise (*id.* ¶ 74); and

(6) breach of contract against Hysen, based on his allegedly breaching the Promissory Note by failing to repay the $125,000 in accordance with the terms thereof (*id.* ¶ 76), as a result of which Smythe is entitled to foreclose on the Property (*id.* ¶¶ 76, 77).

In addition, Count VI of the Amended Complaint seeks a judicial declaration to the effect that neither Hysen nor Inanna GP is entitled to develop the Property, because the plaintiff owns and never assigned the development rights. (*Id.* ¶ 79.)

**B.     Hysen's Motion for Dismissal**

Along with his Motion to Dismiss, Hysen filed a number of documents, including the Williamson County Chancery Court's October 8, 2021 Order granting Hysen's Application for Order Compelling T.A. Smythe to Arbitrate Disputes with Jim Hyson Concerning Inanna, G.P. and "retain[ing] jurisdiction to confirm, modify or vacate the arbitration award" (Doc. No. 16-2); the arbitrator's Award and incorporated factual findings ("arbitration Award") (Doc. No. 16-5); the Williamson County Chancery Court's May 16, 2022 Order Confirming Arbitration Award ("Confirmation Order") (Doc. No. 16-6); the Tennessee Court of Appeals' Order dismissing Smythe's appeal for lack of jurisdiction, based on the untimely filing of his notice of appeal and its Order denying Smythe's Petition for Rehearing (Doc. Nos. 16-8, 16-9); and the Tennessee Supreme Court's Order denying Smythe's application for permission to appeal (Doc. No. 16-10).

As relevant here, the arbitration Award specifically found that Smythe had transferred legal title and the development rights to the Property to the Partnership. In addition, the arbitration Award held that Smythe had materially breached the Partnership Agreement by unilaterally entering into an agreement with a third party to sell the Property to it—without Hysen's permission—but that Hysen had not engaged in an "anticipatory breach" of the Partnership Agreement by meeting with or submitting an application to TDEC. Instead, Hysen's meeting with TDEC was simply part of his due diligence, and it was clear from the record that he did not file any application. (Doc. No. 16-5, at 5.)

The arbitration Award identified a number of claims that Smythe had not raised in a timely manner and that the arbitrator declined to address, including issues related to the amounts due, if any, under the Promissory Note and for legal fees. It excluded Smythe from any further involvement in the Partnership's activities and appointed Hysen to wind up the Partnership's affairs. The arbitrator specifically noted that Hysen's activities in winding up the Partnership's affairs would be "subject to a very strict review at all levels by the undersigned." (Doc. No. 16-5, at 6.) The Award further noted that nothing in the Award "prevents the parties from filing additional claims." (*Id.* at 9.)

The Confirmation Order affirmed the Award in all respects and specifically "decreed" that:

(1) Inanna GP holds "legal title to, as well as the rights to develop," the Property, specifically including the "entitlement for development of the property as established by Mr. Smythe's litigation and settlement" with the City, as "[a]ny and all of such entitlement and/or development rights were previously assigned and transferred to Inanna, G.P.";

(2) Smythe materially breached the Partnership Agreement by unilaterally, without Hysen's approval, executing a contract for sale of the Property to a third party;

(3) Smythe had engaged in conduct relating to partnership business that "make it not reasonably practicable to carry on the business of the partnership with Hysen";

(4) Inanna GP is dissolved pursuant to Tenn. Code Ann. § 61-1-801(5); Hysen is appointed the partner to wind up the affairs of the Partnership, pursuant to Tenn. Code Ann. § 61-1-803; and Smythe, as a "wrongfully disassociated" partner, is not entitled to participate in the winding up of the Partnership's affairs;

(5) "The claims not timely or properly asserted in the Arbitration or otherwise deferred by the Arbitrator for resolution later in the process of winding up the partnership are dismissed without prejudice to future assertion and determination."

(Doc. No. 16-6.)

Meanwhile, according to Hysen, on June 8, 2022, Smythe filed a lawsuit against Hysen in the Williamson County Chancery Court, No. 22CV-51564, that was a "near mirror-image" of his original Complaint in this case. The Williamson County Chancery Court entered an Order on April 28, 2023, staying that case and directing arbitration of the remaining issues. (*See* Doc. No. 16-7.) Rather than proceeding with arbitration, Smythe nonsuited that case on January 3, 2024 and then refiled it in this court on January 25, 2024.

In his Motion for Dismissal, Hysen argues, first, that the *Rooker-Feldman* doctrine precludes relitigation of *all* of Smythe's claims in this court, at least insofar as those claims are based on Smythe's allegations that he owns title to and the right to develop the Property, and those claims should be dismissed without prejudice, for lack of subject matter jurisdiction. Alternatively, Hysen asserts that (1) the Amended Complaint fails to state claims for which relief may be granted and is subject to dismissal under Rule 12(b)(6); (2) that, in any event, Smythe's claim for declaratory relief is barred by issue preclusion/collateral estoppel; and (3) that any remaining claims should be referred to arbitration. (*See generally* Doc. No. 17.)

### C. The City's Motion to Dismiss

The City likewise argues that the breach of contract claim against it is barred by the *Rooker-Feldman* doctrine, because the issue of who owns the rights to develop the Property is "inextricably intertwined" with the state court judgment, and Smythe could only prevail on his claim against the

City if this court finds that the state court wrongly decided that Smythe conveyed the development rights. (Doc. No. 20, at 6–7.) Alternatively, the City argues that the Amended Complaint fails to state a colorable claim for breach of contract against it, because (1) it effectively challenges a municipal administrative action that can only be reviewed by a writ of certiorari to the state's circuit court; (2) any contractual duties owed to Smythe by the City have already been fully performed, and Smythe does not allege otherwise or actually articulate what specific acts by the City constitute breach of contract; and (3) Smythe fails to allege specific damages arising from the City's alleged breach of contract.

## II. THE *ROOKER-FELDMAN* DOCTRINE

### A. Legal Standards

Under 28 U.S.C. § 1257, only the Supreme Court has jurisdiction over appeals from final state court judgments. *Lance v. Dennis*, 546 U.S. 459, 463 (2006). "Accordingly, under what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Id.* (citing *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923)). The doctrine is a "narrow" one, "confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). As the Sixth Circuit has noted, the doctrine is "so narrow [that] the Supreme Court has applied [it] just twice in nearly a century, making it applicable so far just to people named Rooker or Feldman." *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 892 (6th Cir. 2020).

Often, "*Rooker-Feldman* cases are complicated because it's difficult to determine if a plaintiff seeks review of a state-court decision, or if a decision counts as a judgment." *RLR Invs.,*

*LLC v. City of Pigeon Forge*, 4 F.4th 380, 387–88 (6th Cir. 2021) (internal citations omitted). To answer those questions, after *Exxon*, courts are to "determine whether a plaintiff seeks review of a state-court judgment by looking at the 'source of the injury the plaintiff alleges in the federal complaint,' and consider what relief the plaintiff requests." *Id.* at 388 (first quoting *McCormick v. Braverman*, 451 F.3d 382, 395 (6th Cir. 2006), and then citing *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (majority opinion)). "If the injury's source is not the judgment, then the plaintiff's federal claim is independent of the state-court judgment and the district court has jurisdiction over the claim." *Id.*

Notably, the test does not ask whether the claims asserted in the state court and the federal court are the same. *See, e.g.*, *Pieper v. Am. Arb. Ass'n*, 336 F.3d 458 (6th Cir. 2003) (applying *Rooker-Feldman* even though "none of the[] [claims] was actually raised in the state-court litigation"), *quoted in RLR Invs.*, 4 F.4th at 388. Instead, the test asks whether the plaintiff can only prevail on its claims "if the state court were wrong," such that the state court's order "is the source of the injury." *RLR Invs.*, 4 F.4th at 388; *see also McCormick*, 451 F.3d at 395. At the same time, however, a district court is not barred

> from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*Exxon Mobil*, 544 U.S. at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)) (alteration in original); *see also VanderKodde*, 951 F.3d at 406 (Sutton, J., concurring) (construing *Exxon Mobil* as limiting *Rooker-Feldman* to "litigants who sidestep § 1257 by trying to vacate or reverse final state court decisions in federal district court" and confirming that "[t]he doctrine does not apply to federal lawsuits presenting similar issues to those decided in a state

court case or even to cases that present exactly the same, and thus the most inextricably intertwined, issues" (citing *Exxon Mobil*, 544 U.S. at 293/0). "Preclusion, of course, is not a jurisdictional matter." *Exxon Mobil*, 544 U.S. at 293 (citing Fed. R. Civ. P. 8(c) (identifying preclusion as an affirmative defense)).

      **B.**      **Does *Rooker-Feldman* Apply to the Claims Against Hysen?**

Hysen argues broadly that Smythe's aim here is to "resurrect and relitigate issues already resolved in arbitration" and confirmed by the Williamson County Chancery Court in an Order that is now final. (Doc. No. 17, at 8.) Citing exclusively Sixth Circuit cases that were decided before *Exxon Mobile* and that employ the "inextricably intertwined" language that has largely been rejected by both the Supreme Court and the Sixth Circuit, Hysen contends that all of Smythe's claims are premised upon the presumption that Smythe owns the title and development rights to the Property, a presumption that the arbitrator and the state court rejected. The plaintiff responds to both defendants' motions primarily by arguing that *Rooker-Feldman* does not apply, because the state court's "comment" to the effect that Smythe had conveyed the Property and the right to develop the Property to Inanna was simply *obiter dictum* and is not binding on this court.

The court, charged with the duty to consider its subject matter jurisdiction in regard to every case, must consider the *Rooker-Feldman* issue first, simply because the defendants have raised it. *Accord VanderKodde*, 951 F.3d at 407 (Sutton, J., concurring) ("Once raised, jurisdictional defenses must be addressed."). And, to consider whether the doctrine applies here, the court must examine the Amended Complaint in light of the state court judgment that, the defendants argue, presents a jurisdictional bar. *Id.* at 402 ("A court cannot determine the source of the injury 'without reference to [the plaintiff's] request for relief.'" (quoting *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012)) (alteration in original).

As set forth above, the Amended Complaint brings claims under state law for intentional misrepresentation, breach of fiduciary duty, and breach of contract, and it seeks monetary relief as well a judicial declaration that Smythe never assigned his rights to develop the Property. The Chancery Court's Order Affirming Arbitration Award, which is the state court judgment at issue, specifically "Ordered, Adjudged, and Decreed," as relevant here, that:

> (1) Inanna GP "holds the legal title to, as well as the rights to develop," the Property;
>
> (2) Smythe is a "wrongfully disassociated" partner of the Partnership, having committed a material breach of the Partnership Agreement by executing a unilateral contract for the sale of the Property to a third party;
>
> (3) it is not feasible to carry on the business of the partnership in accordance with the Partnership Agreement, which requires unanimous consent on all partnership business, and the only thing the parties agree on is that they cannot agree on any issues facing the Partnership;
>
> (4) Inanna GP is dissolved pursuant to Tenn. Code Ann. § 61-1-801(5);
>
> (5) Hysen is appointed the partner to wind up the affairs of the Partnership, and Smythe, as a "wrongfully disassociated" partner, is not entitled to participate in the winding up of the Partnership's affairs and has no further authority to act in any manner for the Partnership;
>
> (6) Smythe retains his distributive share of the profits and/or reimbursement of fees; and
>
> (7) The claims not timely or properly asserted in the Arbitration or otherwise deferred by the Arbitrator for resolution later in the process of winding up the partnership are dismissed without prejudice to future assertion and determination."

(Doc. No. 16-6, at 3–5.)

Smythe fully acknowledges the existence of the Confirmation Order, and he does not challenge in this court the rulings dissolving the Partnership, disassociating him, and appointing Hysen as the partner in charge of winding up the Partnership's affairs. The City was not a party to the arbitration, and no judgment was entered against it in the Confirmation Order. Consequently, the claim against the City in this lawsuit is clearly not barred by the *Rooker-Feldman* doctrine.

Smythe's claims for breach of contract, breach of fiduciary duty, and intentional misrepresentation against Hysen are independent claims that do not fall within the scope of 28 U.S.C. § 1257 and likewise are not barred by *Rooker-Feldman*. The court clearly has subject matter jurisdiction over these claims.

The plaintiff's request for a judicial declaration that he has not validly assigned the development rights to the Property, Count VI of the Amended Complaint, presents a slightly more difficult question. Although the Confirmation Award itself included the determination that Smythe had assigned title to, and development rights in, the Property as part of the decree, Smythe characterizes that holding as incidental to the arbitration Award and the Confirmation Order, because the primary effect of those rulings was to dissolve the Partnership and appoint Hysen to wind up the Partnership's affairs. Hysen argues in response that this holding was not simply *dictum* but instead an essential part of the final order and that the plaintiff obviously seeks reconsideration of that portion of the order, making Count VI of the Amended Complaint, at least, barred by *Rooker-Feldman*.

Regardless of how the Chancery Court's determination is characterized, the court finds that the plaintiff here is not seeking to *appeal* the Confirmation Order dissolving the Partnership. He simply seeks to relitigate the issue of his ownership of the development rights, which was a question decided in the course of the arbitration for purposes of resolving the partnership dispute. This distinction makes a difference—the difference between *Rooker-Feldman* and mere issue preclusion. In short, *Rooker-Feldman* does not bar the claim, and the court has subject-matter jurisdiction in this case. The court will therefore proceed to the merits of the parties' arguments under Rule 12(b)(6).

## III.    RULE 12(B)(6)

### A.    Legal Standards

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (2007). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). And the court "need not accept as true legal conclusions . . . masquerading as factual allegations." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (internal quotation marks and citation omitted).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). A plaintiff is not required to anticipate or plead avoidance of affirmative defenses. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). As a result, "[c]ourts generally cannot grant motions to dismiss on the basis of an

affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013). At the same time, "[t]here is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law." *Id.* (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009)); *see also id.* ("[A] motion to dismiss can be premised on an affirmative defense[,] provided that the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." (second alteration in original; internal quotation marks and citation omitted)).

"[W]hen evaluating an affirmative defense in a motion to dismiss, a court must . . . only look to the facts alleged in the plaintiff's complaint, albeit alongside the legal elements of the affirmative defense raised in the defendant's motion to dismiss." *Goins v. Saint Elizabeth Med. Ctr.*, 640 F. Supp. 3d 745, 751 (E.D. Ky. 2022) (citing *Hensley Mfg.*, 579 F.3d at 613). "If the elements of an affirmative defense are met by the factual allegations contained in the complaint, then the district court may grant the motion to dismiss." *Id.*; *see also Kreipke v. Wayne State Univ.*, 807 F.3d 768, 784 (6th Cir. 2015) ("Where an affirmative defense appears 'clearly on the face of the complaint,' however, a court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim.").

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider not only the complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted).

A court may also consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citation omitted).

The court finds that the documents presented by Hysen and referenced herein—including the arbitration Award, the Confirmation Order, the plaintiff's arbitration brief, the orders by the Tennessee Court of Appeals and the Tennessee Supreme Court disposing of Smythe's appeal of the Confirmation Order—all qualify either as public records or as documents that are "referred to in the Complaint" and "central" to Smythe's claims. The court will consider these documents without converting the present motion into one for summary judgment.

### B. Hysen's Motion for Dismissal

#### 1. *Count I – Intentional Misrepresentation Regarding Exhibits 2 and 3*

In Tennessee, fraud, intentional misrepresentation, and fraudulent misrepresentation comprise the same tort, which is typically referred to as intentional misrepresentation. *Hodge v. Craig*, 382 S.W.3d 325, 342-43 (Tenn. 2012) To state a claim for intentional misrepresentation, a plaintiff must plausibly allege:

> (1) Defendants made an intentional misrepresentation of a material fact; (2) Defendants made the representation "knowingly" without belief in its truth, or "recklessly" without regard to whether it was true or false; (3) Plaintiff justifiably relied on the misrepresentation and suffered damages; and (4) the misrepresentation relates to an existing or past fact.

*Brown v. Woodbury Auto Grp. LLC*, 591 F. Supp. 3d 282, 294 (M.D. Tenn. 2022) (citations omitted). A future promise can support a claim for intentional misrepresentation if it is made without "the present intention to carry out the promise." *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006); *see also Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 567 (6th Cir. 2003) ("[I]f the claim is based on promissory fraud, then the misrepresentation must 'embody a promise of future action without the present intention to carry out the promise.'" (quoting *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).

At the same time, however, "[w]here a claim for fraudulent inducement rests on false promises made without the present intent to perform, . . . the plaintiff must prove more than a subsequent failure to keep the promise." *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 823 F. Supp. 2d 786, 815 (W.D. Tenn. 2011); *see also Fowler v. Happy Goodman Fam.*, 575 S.W.2d 496, 499 n.3 (Tenn. 1978) ("The intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance . . . . The intention may be shown by any other evidence that sufficiently indicates its existence, as, for example, the certainty that he would not be in funds to carry out his promise." (quoting Restatement (Second) of Torts § 530, Comment (D) (1977)).

Exhibits 2 and 3 to the Amended Complaint are the Real Estate Purchase Agreement and the Partnership Agreement. Under the heading "Count I," Smythe alleges that

> By telling the Plaintiff orally and in writing that he was entering into the partnership to develop the court-approved plat (as discussed in Exhibits 2-3), all while knowing that he had no intention of following the approved plat, and thereby causing the Plaintiff to rely on the false representation to his detriment, Defendant JIM HYSEN is liable for Intentional Misrepresentation.

(Doc. No. 12 ¶ 66.)

Hysen argues that Smythe does not allege any facts that would allow the court to infer that, at the time of execution of the partnership agreement, Hysen had any intent other than to facilitate the Partnership's development of the Realty, if possible, consistently with the "court approved plan." (Doc. No. 17, at 12.) Smythe responds that his allegation that Hysen represented to him orally and in writing that he would serve as a partner to achieve the "goal of implementing the court-approved plat, and yet he intended to deviate from it all along" "[a]rguably . . . suffices." (Doc. No. 25, at 6.) He further points out that the Amended Complaint alleges additional facts, including that Hysen had met "secretly" with TDEC even before signing the Partnership Agreement, later "obstructed the partnership by refusing to convey the results of a field survey,"

and, from the beginning of the partnership, "used his veto power to block any development in accordance with the court-approved plat." (*Id.* at 7.)

Regarding the purported refusal to convey the results of a field survey, the plaintiff has neither explained how this pertains to the Partnership nor plausibly alleged that Hysen promised to provide him the results of the field survey to induce him to contract with him, all while intending not to do so. Insofar as Hysen's purported failure to convey the results of the field survey and his use of a veto power to block development constitute failure to perform his obligations under the Partnership Agreement, breach of contract, standing alone, does not qualify as evidence that Hysen intended, at the time of contracting, not to perform under the contract. The plaintiff does allege that Hysen failed to come up with the financing anticipated by both agreements, but he does not allege that Hysen knew, at the time of contracting, that he would not be able to obtain financing. In fact, the Amended Complaint itself characterizes that failure as unexpected. (Doc. No. 12 ¶ 26.)

As for the meeting with TDEC, the Offer of Judgment itself, incorporated into the Judgement, provides that the City "takes no position as to the type of onsite wastewater system" was installed on the Property, so long as (1) the system was approved by TDEC; (2) the system was wholly self-contained and located on private property; and (3) the system was not connected to the City's sewer system. *Smythe v. Bd. of Comm'rs*, No. 3:16-cv-02712 (M.D. Tenn. Jan. 21, 2020) (Judgment, Doc. No. 78); *id.* (M.D. Tenn. Jan. 16, 2020) (Offer of Judgment, Doc. No. 76, at 4). The plaintiff has not alleged facts suggesting how Hysen's meeting with TDEC, which apparently took place before the parties signed the Partnership Agreement, signaled an intention not to develop the Property in accordance with the court-approved plat.

The court finds, in short, that the only "fact" the plaintiff alleges to support the inference that Hysen promised to partner with him to develop the Property in accordance with the court-

approved plat while knowing that he did not intend to develop the Property in accordance with the court-approved plat is that he subsequently, according to the plaintiff, refused to develop the Property in accordance with the court-approved plat. In other words, the only factual allegation the plaintiff offers in support of his claim that Hysen made a "false promise[] . . . without the present intent to perform" is the "subsequent failure to keep the promise." *Carbon Processing*, 823 F. Supp. 2d at 815. As set forth above, that is not sufficient to state a claim for promissory fraud, *Fowler*, 575 S.W.2d at 499 n.3, and it amounts to nothing more than a "threadbare recital[] of a cause of action's elements, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).[5]

Count I will be dismissed for failure to state a claim for which relief may be granted, under Rule 12(b)(6).

### 2. *Count II – Breach of Fiduciary Duty*

Under Tennessee law, to recover for breach of fiduciary duty, a plaintiff must establish: "(1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." *In re Est. of Potter*, No. W2016-01809-COA-R3-CV, 2017 WL 4546788, at *2 (Tenn. Ct. App. Oct. 11, 2017) (quoting *Ann Taylor Realtors, Inc. v. Sporup*, No. W2010-00188-COA-R3-CV, 2010 WL 4939967 at *3 (Tenn. Ct. App. Dec. 3, 2010) (citing 37 C.J.S. Fraud § 15 (2008))). There is no dispute that partners in a partnership owe each other a fiduciary duty. *Cude v. Couch*, 588 S.W.2d 554, 555 (Tenn. 1979).

---

[5] Although the promissory fraud claim is governed by state law, the pleading of fraud is subject to the "particularity" requirement of Federal Rule of Civil Procedure 9(b). *See Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 751 (6th Cir. 2012)). Hysen has not raised a defense based on Rule 9, however, and the court finds that the claim is deficient under Rule 8.

According to Smythe, Hysen contacted TDEC "secretly," about two weeks after signing the Real Estate Purchase Agreement and nearly two months before signing the Partnership Agreement. Smythe alleges that Hysen submitted an application for a particular type of sewer system and listed WADC as his proposed sewer operator, without Smythe's knowledge or consent, and then Hysen entered into the formal Partnership Agreement without revealing the content and effect of his conversations with TDEC and the sewer application. (Doc. No. 12 ¶¶ 35–44.) Hysen allegedly refused, "throughout their partnership," to provide Smythe "the results of a field survey carried out for the property." (*Id.* ¶ 53.) Hysen asserts that these allegations are too "cryptic" to state a claim "with specificity or plausibility." (Doc. No. 17, at 13.)

The court finds that the Amended Complaint adequately alleges that Hysen owed and breached a fiduciary duty to Smythe. Under Tennessee law, the fiduciary duty that partners in a partnership owe to each other includes an obligation of good faith and fair dealing. *See Anderson v. Wilder*, No. E2003-00460-COA-R3-CV, 2003 WL 22768666, at *4 (Tenn. Ct. App. Nov. 21, 2003); Tenn. Code Ann. §61-1-404(d). It is true, as Hysen argues, that the arbitrator found that Hysen contacted TDEC as part of his due diligence and did not actually submit any kind of application, and Hysen may well be entitled to summary judgment on this claim, either based on the undisputed facts or based on issue preclusion. Hysen, however, has not cogently argued that issue preclusion bars this claim. At this juncture, the court simply finds that the Amended Complaint states a colorable claim for breach of fiduciary duty.

### 3. Count III – Breach of Contract

The Amended Complaint asserts that, "[b]y failing to take any reasonable steps to develop the court-approved plat as contemplated in the land sale contract and the final partnership agreement (Exhibits 2–3), Defendant Jim Hysen is liable for breach of contract." (Doc. No. 12 ¶ 70.)

Hysen argues, first, that he is "not even a party" to the Real Estate Purchase Agreement, so he cannot be charged with breach of that agreement. The plaintiff, however, plausibly alleges that Hysen controlled LandVenues Inc. and that LandVenues assigned to Hysen whatever rights and obligations it had under the Real Estate Purchase Agreement. Hysen argues more persuasively that the Real Estate Purchase Agreement was either extinguished or superseded by the Partnership Agreement. (Doc. No. 17, at 13–14.) The court finds that the plaintiff's true focus is Hysen's alleged breach of the Partnership Agreement.

The Partnership Agreement contains several provisions governing the parties' conduct, including that "all decisions must be unanimous"; the parties "intend to speak weekly" and to keep minutes at a "mutually convenient place"; neither party could sell or transfer his interest in the Partnership; all matters relating to the Partnership Agreement would remain confidential; and both parties would "exercise their best efforts, fairly and in good faith" (Doc. No. 12-3, at 2, 3.) The Partnership Agreement also specifies that each partner owns 50% of the Partnership. (*Id.* at 1.)[6] The plaintiff insists that Hysen agreed, orally and in writing, to develop the Property in accordance with the Judgment (the "court-approved plat") and that he violated that agreement by refusing to do so. He points to particular changes that Hysen wanted to make—eliminating the roundabout, reducing the size of the public park, involving WADC in the discussions about the sewer system to be implemented. He asserts that Hysen "used his veto power . . . to sabotage any efforts to

---

[6] This provision effectively supersedes a similar provision in the Real Estate Purchase Agreement that states:

> Purchase Price includes the assigned court Judgment providing buyer with the vested rights in the R-15 Pud 89-lot zoning overlay attached and a 50/50 joint venture with the Seller TA Smythe in the net proceeds from the development and sale of the final subdivision lots as they are sold once the bank loans for construction are repaid.

(Doc. No. 12-2, at 11.)

develop the land as outlined in the federal court judgment." (Doc. No. 12 ¶ 47.)

Based in particular on this latter allegation, the court construes the Amended Complaint as alleging that Hysen breached his duty of good faith and fair dealing by continually acting unreasonably in his dealings with Smythe after they became partners, rejecting all of Smythe's proposals and insisting on pursuing his own, which, according to Smythe, did not conform to the court-approved plat. Allegations that Hysen unreasonably withheld his consent to the plaintiff's proposed plans for proceeding with the development of the property are at least arguably sufficient to state a claim for breach of contract under Tennessee law, particularly given that the contract here imposed an express obligation on both parties to act in good faith and to reach unanimous accord on any Partnership decisions. *Accord Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 672 (Tenn. 2013) (holding that, "where the parties have contracted to allow assignment of an agreement only with consent and the agreement is silent regarding the anticipated standard of conduct in withholding consent, the implied covenant of good faith and fair dealing requires a party to act with good faith and in a commercially reasonable manner in refusing consent to assign the agreement").

This claim, too, arguably butts up against the arbitration Award and Confirmation Order—in particular the arbitrator's findings that Smythe had committed a material breach of the Partnership Agreement by unilaterally contracting to sell the Property without Hysen's consent and that Hysen had not breached the contract by meeting with TDEC or bringing in the City of Dickson as the sewer operator. Hysen retains the right to contest this claim at the summary judgment stage, but, for now, he has not cogently argued that the claim is facially barred by collateral estoppel.

### 4.    *Count IV – Intentional Misrepresentation Regarding Exhibit 4*

Exhibit 4 is the Promissory Note. The plaintiff alleges that Hysen agreed to pay him a total

of $125,000 plus interest, "while knowing that he never intended to fulfill said promise, and causing the Plaintiff to rely on the false representation to his detriment." (Doc. No. 12 ¶ 74.) The plaintiff alleges *no* facts that would support an inference that Hysen intended at the time of signing the Note not to repay the Note, other than the fact that Hysen subsequently failed to repay the Note when it came due a year later. For the same reasons that Count I fails to state a claim, Count IV also fails to state a claim for promissory fraud. This claim will be dismissed for failure to state a claim for which relief can be granted.

5.     *Count V – Breach of the Promissory Note*

In Count V, Smythe alleges the existence of an enforceable contract (the Note), concrete terms (a promise to repay $125,000 plus a specific amount of interest on or by a specific date), and a breach of those terms (failure to pay as promised). The Amended Complaint clearly states a breach of contract claim in connection with the Note.

The Promissory Note is secured by the Property and the development rights to the Property and purports to grant Smythe the right of repossession upon default. (Doc. No. 12-2 ¶¶ 4–6.) For relief, the plaintiff seeks both a money judgment as well as the placement of a lien *lis pendens* on the Property and judicial foreclosure on the Property. (Doc. No. 12, at 17.) Hysen seeks dismissal of this claim on the basis that the Amended Complaint fails to allege "fact[s] that [would] allow a judicial foreclosure against the partnership" and fails to explain how the requested relief does not conflict with the arbitration Award and Confirmation Order barring Smythe from interfering with the winding-up of the partnership.  (Doc. No. 17, at 16.)

Hysen's argument effectively raises the affirmative defense of claim preclusion or perhaps some unidentified abstention doctrine. But Hysen has not adequately established as a matter of law that the claim is facially precluded or that the court should refrain from ruling on it. In fact, the arbitrator expressly declined to reach the question of whether Hysen had breached the Promissory

Note. While Hysen retains the ability to raise whatever defenses may be available to him in his answer and to seek summary judgment on the claim, the court finds that the Amended Complaint states a colorable breach of contract claim based on Hysen's alleged failure to repay the Note.

### 6. *Count VI – Judicial Declaration*

In Count VI, Smythe seeks a judicial declaration that he did not assign away the development rights to the Property. Hysen specifically asserts that the doctrine of issue preclusion, or collateral estoppel, precludes retrial of this issue, as the Chancery Court's Confirmation Order expressly decreed that Smythe did, in fact, assign the development rights to the Partnership, which is now controlled, and being wound down, by Hysen. Smythe responds that the Confirmation Order's apparent holding that Smythe conveyed the development rights to the Partnership was mere *dictum* that should be accorded no preclusive effect under Tennessee law and that the issue of who owns the development rights was not fully litigated in the underlying arbitration.

"[W]hen a federal court exercises diversity jurisdiction over a state law claim, federal common law governs the issue preclusion analysis." *In re Berge*, 953 F.3d 907, 916 (6th Cir. 2020) (citing *Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). However, "federal preclusion law directs courts to apply 'the law that would be applied by state courts in the State in which the federal diversity court sits,' so long as the state rule is not 'incompatible with federal interests.'" *Id.* at 917 (quoting *Semtek Int'l*, 531 U.S. at 508–09). "Tennessee preclusion law is compatible with federal interests (indeed, the respective preclusion rules are the same)," *id.*, so Tennessee law governs the court's preclusion analysis.

Under Tennessee law, issue preclusion—also known as collateral estoppel—is a court-made doctrine that bars the same parties from relitigating in a second suit issues that were raised and determined in a prior suit. *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016). The doctrine applies to both legal and factual issues. *White v. Bradley Cty. Gov't*, 639 S.W.3d 568,

580 (Tenn. Ct. App. 2021) (citing *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 179 (Tenn. Ct. App. 2000). Preclusion is an affirmative defense that must be pleaded and proved. *SMA Portfolio Owner, LLC v. Corporex Realty & Inv., LLC*, 112 F. Supp. 3d 555, 568 (E.D. Ky. 2015) (citing *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)), *aff'd sub nom. Bank of Am., N.A. v. Corporex Realty & Inv. Corp.*, 661 F. App'x 305 (6th Cir. 2016).

> To prevail on a collateral estoppel defense, the party asserting it must demonstrate:
>
> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*White*, 639 S.W.3d at 580 (quoting *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009)). The party invoking the doctrine has the burden of proof. *Id.*

For the doctrine of collateral estoppel to apply, "the issue must not only have been actually litigated and decided, it must also have been necessary to the judgment." *Mullins*, 294 S.W.3d at 535 (citations omitted). "Determinations of an issue or issues that are not necessary to a judgment have the characteristics of *dicta* and will not be given preclusive effect." *Id.* (citing Restatement (2d) of Judgments § 27 cmt. h (1982)). At the same time, however, "an issue need not be subject to a full evidentiary and adversarial trial to be 'actually litigated.' Rather, '[t]he requirement that an issue be "actually litigated" is generally satisfied if the issue was properly raised by the pleadings or otherwise placed in issue and was actually determined in the prior proceeding.'" *In re Bridgestone/Firestone*, 495 S.W.3d 257, 268 (Tenn. Ct. App. 2015) (quoting *Mullins*, 294 S.W.3d at 536).

As set forth above, a plaintiff is generally not required to anticipate or plead avoidance of affirmative defenses. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). For dismissal of a claim based on an affirmative defense to be appropriate under Rule 12(b)(6), it must be plain from the face of the pleading (including attached exhibits) that the plaintiff is not entitled to relief. *See id.* (approving dismissal based on the statute of limitations in such circumstances).

It is clear from the face of the Amended Complaint that the first, third, and fourth elements of the issue preclusion test, at a minimum, are satisfied.[7] The issue of whether the plaintiff assigned the rights to develop the Property the Partnership was affirmatively addressed in the arbitration Award and confirmed by the Williamson County Chancery Court's Confirmation Order, both of which unambiguously state:

> Inanna, G.P. holds the legal title to, as well as the rights to develop, the partnership property located on Cox Pike in Fairview, Williamson County, Tennessee. This includes, but is not limited to, the entitlement for development of the property as established by Mr. Smythe's litigation and settlement with Fairview, Williamson County, Tennessee. Any and all of such entitlement and/or development rights were previously assigned and transferred to Inanna, G.P.

(Doc. No. 16-6, at 2; Doc. No. 16-5, at 6.) The Confirmation Order qualifies as a final judgment, because the plaintiff's appeal to the Tennessee Court of Appeals was dismissed as untimely, the

---

[7] The fifth element "may appear to be the same as the 'actually litigated' requirement," but "it is not." *In re Bridgestone/Firestone*, 495 S.W.3d at 268. This element focuses on the *parties*, while the "actually litigated" requirement focuses on the *issues*. *Id.* When the preclusion defense is invoked against the plaintiff, "it is appropriate to consider (1) the procedural and substantive limitations placed on the plaintiff in the first proceeding, (2) the plaintiff's incentive to litigate the claim fully in the first proceeding, and (3) the parties' expectation of further litigation following the conclusion of the first proceeding." *Mullins*, 294 S.W.3d at 538–39 (footnotes omitted). Neither party actually addresses this element, but the plaintiff's arbitration brief expressed his faith in the arbitrator and his belief that the procedure would be fair, and the arbitration Award itself makes it clear that the arbitrator gave Smythe the benefit of every doubt. In addition, the plaintiff clearly had incentive to fully litigate this issue, and, while the parties anticipated further litigation, they did not have a reason to anticipate further litigation of *this* issue, except through the appeal process.

Tennessee Supreme Court denied review, and no further appeal of the Confirmation Order is available to Smythe. Finally, Smythe, the party against whom collateral estoppel is asserted, was a party to the earlier proceeding.

Smythe concedes that he is "indeed disputing a factual finding by the arbitrator"—namely, "whether the [development] rights were really transferred." (Doc. No. 25, at 2.) He nonetheless argues that "the factual issue about who owns the development rights was not litigated at all— fully and fairly, or otherwise. The finding was *dicta*." (*Id.* at 13; *see also id.* at 2.) Attached to Smythe's Response in Opposition to Motions to Dismiss is a copy of Hysen's Application for Order Compelling [Arbitration] and Hysen's arbitration demand letter, the latter of which asserts that Smythe is in violation of the Partnership Agreement and seeks "an award of expulsion and disassociation of Mr. Smythe as a partner of Inanna, GP." (Doc. No. 25-1, at 8.) The demand also specifies that Hysen "reserves the right to amend this demand for arbitration" and states that it is "without limitation as to the supporting facts to be submitted to the arbitrator." (*Id.* at 9.) The language of the arbitration demand is effectively incorporated into the Amended Complaint, in which Smythe alleges that the parties agreed to arbitrate the question of "who would control the partnership to end their deadlock." (Doc. No. 12 ¶ 57.) The arbitrator resolved that issue, appointing Hysen as the controlling partner for purposes of winding down the Partnership, thus also putting him in control of the Property and development thereof.

In addition, however, Smythe's arbitration brief, also in the record, shows that he took the position in the arbitration that he had not actually assigned the development rights, because Hysen had not fulfilled his responsibilities under the Partnership Agreement. (Doc. No. 16-4, at 13 ("I still had not assigned the Court Approved Plat to anyone, since Mr. Hysen had never fulfilled his responsibilities in turn.").) The arbitrator and the Chancery Court rejected that argument, finding

that Smythe's construed claim of "tortious interference" was not timely but, even if it had been, "it would have been dismissed on the record presented." (Doc. No. 16-5, at 8; *see id.* at 4 ("The undersigned allowed Smythe to make an offer of proof on his tortious interference claim and then found that even if the claim had been timely filed—it would be dismissed based on the proof and record made in the hearing."); *see also* Doc. No. 16-6, at 2 (confirming the Award).)

Regardless, in order to resolve the partnership dispute, the arbitrator clearly had to take into consideration the terms of the Partnership Agreement and to decide, as a factual matter, whether the Partnership held the development rights to the Property. If the Partnership had not been deemed in possession of the Property and the development rights, there effectively would have been no Partnership business entrusted to Hysen as the controlling partner for purposes of winding up the Partnership's business. Although Smythe claims that this issue was not actually litigated, it inescapably forms the bedrock for the terms of the arbitration Award and the Confirmation Order. As such, it was "otherwise placed in issue and was actually determined in the prior proceeding." *Mullins*, 294 S.W.3d at 536.[8]

Smythe's only defense to Hysen's issue preclusion argument is that the arbitrator's and Chancery Court's holding that Smythe had assigned the development rights to the Partnership was mere *dictum*. The court finds that it was not *dictum* but essential to the ruling on Hysen's appointment to wind up the Partnership business; to permit relitigation of this issue in this forum would inevitably interfere with Hysen's court-ordered ability to conduct that business. Because the question of the transfer of the development rights was placed in issue and actually determined in the prior proceeding, Smythe is collaterally estopped from relitigating this issue. Count VI and

---

[8] The issue provided little fodder for litigation, because the underlying contracts so unambiguously vested the Property development rights in the Partnership.

the demand for a declaration that Smythe never assigned the development rights will be dismissed.

### 7. Arbitration

In his Motion for Dismissal, Hysen first moves for dismissal of his claims under Rule 12(b)(1) and Rule 12(b)(6). (Doc. No. 16, at 1.) "[A]lternatively," he moves "for a stay of any claims not so dismissed and for reference of said claims to arbitration for resolution." (*Id.*; *see id.* at 7 ("[I]n the event that the Court does not dismiss all of the claims asserted in the Amended Complaint, the Court should stay or dismiss *the ones not so dismissed* and refer them to arbitration for resolution.").)

The claim for breach of the Promissory Note is clearly not subject to arbitration. The Promissory Note does not contain an arbitration provision and expressly contemplates the consideration and enforcement of its provisions by "a court of competent jurisdiction." (Doc. No. 12-4, at 2.) Under Tennessee law, "parties cannot be forced to arbitrate claims that they did not agree to arbitrate." *Altom v. Cap. Resorts Grp., LLC*, No. E2019-00739-COA-R3-CV, 2020 WL 3400680, at *4 (Tenn. Ct. App. June 19, 2020) (quoting *Frizzell Constr. Co., Inc. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 84 (Tenn. 1999)). The court sees no basis for compelling the parties to arbitrate their dispute under the Promissory Note.

As for the breach of fiduciary duty and breach of contract claims, the court finds that Hysen has waived the ability to compel arbitration, simply by virtue of having asked the court to first consider the claims on their merits, which is completely inconsistent with reliance on an arbitration agreement. *Accord Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 976 (6th Cir. 2024) ("[I]n most of our cases finding arbitration waiver, there has been an affirmative request for relief, such as the filing of a dispositive motion." (citations omitted)).

Even if that were not the case, the arbitration provision itself is very narrow, insofar as it appears to provide for the arbitration of business decisions regarding which the partners cannot

reach a unanimous agreement. (*See* Doc. No. 12-3, at 2 ("In the event the partners disagree at any point, then both will submit to the binding decision of a third party.").) It does not provide for the arbitration of legal claims relating to the breach of the Partnership Agreement itself or independent tort claims, such as breach of fiduciary duty. For this reason, too, Hysen's alternative request that any non-dismissed claims be referred to arbitration will be denied.

### C. The City's Motion to Dismiss

The court has already rejected that part of the City's motion that, like Hysen's, asserts that the court lacks subject matter jurisdiction over the breach of contract claim against it based on the *Rooker-Feldman* doctrine. It is abundantly clear that Smythe does not attempt to appeal any final judgment rendered in a suit between him and the City, because the City was not a party to the prior proceeding.

The City argues in the alternative that the Amended Complaint fails to state a claim against it for which relief may be granted and, therefore, is subject to dismissal under Rule 12(b)(6). In support of this argument, it asserts, first, that the claim is subject to dismissal because "a challenge to a municipal administrative action can only be reviewed by a writ of certiorari to the state's circuit court." (Doc. No. 20, at 7.) The court rejects this argument. Tennessee courts have indeed held that "the proper vehicle by which to seek judicial review of decisions of the local Board of Zoning Appeals is the common law writ of certiorari." *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 576 (Tenn. Ct. App. 2005); *see also* Tenn. Code Ann. §§ 27-9-101 through 27-9-1112 (outlining the certiorari procedure). The plaintiff's claim against the City, however, is for breach of contract. It is not a challenge to a zoning decision.

Alternatively, the City argues that, (1) while the plaintiff's acceptance of an Offer of Judgment arguably may be construed as a contract, once judgment is entered, it becomes an Order of the court; (2) the Amended Complaint does not allege specific acts by the City constituting a

breach; and (3) Smythe does not "allege with particularity the damages he suffered." (Doc. No. 20, at 11.) In response, Smythe asserts that the parties clearly meant for the Judgment to "serve as an ongoing covenant," imposing ongoing obligations on both parties. (Doc. No. 25, at 10.) He claims that the City breached these obligations by "chang[ing] the [development] rights around without Smythe's permission," and "now is the time for the court to enforce the original contract." (*Id.* at 9–10.) More specifically, he alleges that, in early 2024, the City "authorized Hysen (and/or Inanna GP) to develop the land in ways inconsistent with the federal judgment shown at Exhibit 1." (Doc. No. 12 ¶ 62.) That is, the City authorized Hysen to make substantial changes to the plat by eliminating a roundabout and reducing the size of a public park. (*Id.*) Smythe's position appears to be that the City's acquiescence to these changes constitutes a breach of contract by the City.

The most obvious obstacle to this claim is that, as set forth above, Smythe assigned the development rights acquired through the Judgment, as well as title to the Property, to the Partnership, which is now controlled by Hysen. Having conveyed the rights he acquired through the Judgment, Smythe effectively has no standing to litigate the question of whether the City's agreement with Hysen to allow him to deviate from the Preliminary Development Plan constitutes breach of the terms of the Judgment.

Moreover, even assuming Smythe had the ability to enforce the Offer of Judgment at this point, the Offer of Judgment imposed very limited obligations on the City. The City agreed to the entry of a lump sum monetary judgment against it in the amount of $250,000, which it agreed to pay Smythe, and it agreed to the entry of a non-monetary judgment against it, pursuant to which it expressly approved the Preliminary Development Plan attached to the Offer of Judgment as Exhibit A, agreed that the Plan "conforms with all requirements for a Preliminary Master Development Plan and for rezoning of the Property from RS-40 to RS-15 PUD under the

applicable Zoning Ordinance of the City of Fairview . . . and all other ordinances and governing documents for the City," and agreed that the Property was so rezoned. (Doc. No. 12-1, at 2, 3.) It expressly agreed that the Offer of Judgment conveyed to Smythe fully assignable "vested rights for the Property." (*Id.* at 3.) Otherwise, however, the obligations imposed by the Offer of Judgment were on *Smythe*: he was authorized to develop the Property in accordance with the Preliminary Development Plan. Smythe does not allege that the City breached its affirmative obligations to (1) accept entry of a judgment against it; (2) pay him money; (3) rezone the Property; and (4) allow him to develop the Property in a manner that complied with the terms of the Preliminary Development Plan. Nothing in the Offer of Judgment and Judgment prevented the City from acquiescing to proposed changes to the Preliminary Development Plan, whether they were proposed by Smythe or by the person or entity to whom or which he assigned his development rights, so long as both parties agreed to the changes.

In sum, the allegations in the Amended Complaint, accepted as true and viewed in the light most favorable to the plaintiff—but also in light of the written documents attached to the pleading and the adjudicated fact that Smythe assigned his rights in the Property to the Partnership—fail to establish a breach of contract by the City. The City is entitled to dismissal of this claim under Rule 12(b)(6).

## IV.    CONCLUSION

For the reasons set forth herein, the City's Motion to Dismiss (Doc. No. 19) will be granted in its entirety, and defendant Hysen's Motion for Dismissal (Doc. No. 16) will be granted in part and denied in part. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge